**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| NEW CONCEPT MASSAGE & BEAUTY SCHOOL, INC.,<br>1164 SW 67 Avenue<br>Miami, FL 33144 | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| NATIONAL ACCREDITING COMMISSION OF CAREER ARTS & SCIENCES, Inc.<br>**Serve**: R/A Jennifer O. Schiffer<br>2311 Wilson Blvd., Ste. 500<br>Arlington, VA  22201 | ) ) ) ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF NEW CONCEPT MASSAGE & BEAUTY SCHOOL INC.'S VERIFIED**
**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff New Concept Message & Beauty School, Inc. ("**New Concept**"), by and through undersigned counsel, and for its Verified Complaint for Damages against the National Accrediting Commission of Career Arts & Sciences, Inc. ("**NACCAS**"), states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.      Plaintiff New Concept is a Florida corporation with its principal place of business in Miami, Florida. New Concept is a cosmetology school, which was formed in 1993, and today has three (3) campuses in Miami, Florida.

2.      Defendant NACCAS is a Delaware corporation with its principal place of business at 3015 Colvin Street, Alexandria, VA 22314 that is registered as a foreign corporation in Virginia and may be served by its Registered Agent Jennifer O. Schiffer, 2311 Wilson Blvd., Ste. 500, Arlington, VA  22201.

1

3.      Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 as this civil action arises under the Constitution and laws of the United States, including under the federal common law.

4.      Subject Matter Jurisdiction is further proper in this Court pursuant to 20 U.S.C. § 1343(a)(4), in that New Concept seeks relief under the Higher Education Act of 1965, as amended, 20 U.S.C. § 1099b(f), for the protection of its civil rights; 20 U.S.C. § 1099b(f) provides exclusive federal jurisdiction for disputes with recognized accrediting agencies.

5.      Alternatively, Subject Matter Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between New Concept and NACCAS and the amount in controversy exceeds $75,000.00.

6.      Personal Jurisdiction is proper in this Court as NACCAS' principal place of business is in Alexandria, Virginia.

7.      Venue is proper in this judicial district and division under 28 U.S.C. § 1391(b)(1), (2) because NACCAS is headquartered within the Alexandra Division of the Eastern District of Virginia, and a substantial part of the events or omissions giving rise to New Concept's claim(s) occurred within the Alexandria Division of the Eastern District of Virginia.

8.      Jurisdiction and Venue are further proper in this Court, in accordance with 28 U.S.C. § 1404, pursuant to Article XVI, Section II of NACCAS's By-Laws (the "**By-Laws**"), which provides in part:

> Jurisdiction and venue of any Accreditation Claim not subject to final, binding arbitration against a NACCAS Party shall be only in the U.S. District Court for the Eastern District of Virginia, Alexandria Division or the Circuit Court for the City of Alexandria, which ever shall have subject matter jurisdiction.

A true and accurate copy of the By-Laws is attached hereto as, and contained within **Exhibit 1**.

*See* Exhibit 1, Article XVI, Section II, *Suits Against NACCAS, Jurisdiction, Venue and Choice of Law.*

## FACTUAL BACKGROUND RELEVANT TO ALL COUNTS

9.     This matter arises out of NACCAS's improper and ineffective notices to New Concept concerning a Letter of Inquiry, Show Cause Order, a Notice of Withdrawal of Accreditation and a Notice of Termination making  the withdrawal of accreditation final (the "**Negative/Adverse Actions**"), when it served notice of the Negative/Adverse Actions to New Concept's deceased founder and original President, despite knowing of her death, which notices led to New Concept's accreditation being withdrawn.[1]

### Accreditation

10.     NACCAS is an institutional accrediting agency recognized by the U.S. Department of Education ("**DOE**"), pursuant to 20 U.S.C. § 1099b. During all relevant times herein, NACCAS held such recognition.

11.     In order for New Concept to participate in Title IV programs for students to receive federal student aid, New Concept was required to be accredited by an accrediting agency recognized by the DOE.

12.     New Concept has been accredited by NACCAS for approximately twenty (20) years and was allowed/required to offer its students Title IV federal student aid for this period of time.

---

[1] In addition, NACCAS' Board of Commissioner Daykel Menedez serves as a School Administrator Commissioner. Menedez is the current owner of Celebrity School of Beauty which is located less than two (2) miles away from one of New Concept's campuses, and approximately seven (7) miles from another New Concept campus. Celebrity School of Beauty is a direct competitor of New Concept.

3

13. Specifically, in <u>July of 2024</u>, New Concept was reaccredited by NACCAS, for six (6) years thereafter (i.e. up and until July of 2030), with no limitations. In other words, NACCAS found New Concept to be in compliance with all Standards, Policies, and Rules.

14. In relevant part, in order for New Concept to remain accredited by NACCAS, NACCAS imposed "sustaining fees" on New Concept, which it invoiced to New Concept at its email address, ncmbs@earthlink.net. *See* Exhibit 1, NACCAS 2026 Handbook, Rules of Practice and Procedure, Section 2.4(b)(1).

15. When NACCAS wanted its "sustaining fees" (which, depending on the revenues of an institution, generally were at least $2,000.00 per member institution), it stressed to member institutions that the "school's email address is important to NACCAS as a part of the requirement that you are able to receive all official communications <u>relevant to your accreditation</u>."

16. Moreover, to operate as a post-secondary school, New Concept is required to maintain a license in the State of Florida.

17. New Concept has been fully licensed by the Florida Commission for Independent Education (the "**CIE**") to operate in the State of Florida, since August 17, 1994, on the basis of being "Licensed By Means of Accreditation."

18. New Concept currently has approximately one hundred and twenty (120) students enrolled and fifteen (15) employees across the three (3) campuses.

19. Approximately two-thirds (2/3) of the students enrolled at New Concept receive Title IV federal student aid.

20.     Notably, New Concept's tuition rate for its programs[2] are at, or significantly below market, which allows low-income students to gain access to quality education in the cosmetology industry.

21.     Over the past three fiscal years, over eighty percent (80%) of New Concept's "cash basis revenues" comes from Title IV federal student aid programs.

22.     New Concept continually enrolls new students, and such new students start classes at New Concept on every Monday.

23.     In January and February of every year, New Concept on average enrolls the most students of any months throughout the year, which is approximately thirty (30) new enrollees every Monday throughout January and February.

24.     New Concept operates out of three (3) campuses, with its main campus located at 1164 SW 67 Ave., Miami, Florida 33144.

25.     New Concept maintains its principal address and mailing address with the Florida Department of State, Division of Corporations as 1164 SW 67 Ave., Miami, Florida 33144.

26.     New Concept maintains its Registered Agent as Ignacio Manuel Garcia, at 14125 SW 45 Terr., Miami, Florida 33145, with the Florida Department of State, Division of Corporations.

---

[2] New Concept currently offers several long-term programs for students to become certified in, including cosmetology, barber, massage therapy, and full specialist. New Concept also offers short-term programs for students to become certified in, including nail technician and facial specialist.

27.    At all relevant times herein[3], New Concept maintained three (3) Officer(s)/Director(s) information with the Florida Department of State, Division of Corporations, as follows:

    a.  Ignacio Manuel Garcia ("**I. Garcia**"): 14125 SW 45 Terr., Miami, Florida 33175;

    b.  Alexander Garcia ("**A. Garcia**"): 1201 SW 124th Court, Unit E., Miami, Florida 33145; and

    c.  Maria Vazquez: 100 Lincoln Rd., #722, Miami Beach, Florida 33139.

### NACCAS Rules

28.    New Concept agreed to NACCAS's accreditation Standards and Criteria (the "**Standards**"), Policies, and the Rules of Practice and Procedure (the "**Rules**") (collectively the "**Handbook**"). A true and accurate copy of the 2025 Handbook, which was applicable during the times and events alleged herein, can be found on the NACCAS website at this link, https://naccas.org/naccas-handbook.[4]

29.    The Rules, which are contained in the Handbook, provides in relevant part:

> Whenever the Commission takes an action on an applicant or accredited school pursuant to these Rules, the Commission shall notify <u>the affected institution</u> in writing of that action, within 45 calendar days; provided, however, that written notice of any action to deny or withdraw accreditation, or to place a school's accreditation on probation, shall be given within 30 calendar days. The notice shall be sent to the chief executive officer <u>or designated official</u> of the institution via certified mail, return receipt requested, or other traceable means.

*See* Exhibit 1, the Handbook, the Rules, Section 8.16 *Official Notification of Commission Action*, pg. 119 (emphasis added).

---

[3] Please note on July 3, 2025, New Concept amended its Officer/Director information with the Florida Department of State, Division of Corporations, to reflect I. Garcia as President; Samantha Angelica Garcia as Vice President; and Gabriella Isabella Garcia as Treasurer.

[4] The 2026 Handbook attached hereto as Exhibit 1 contains all relevant Standards, Policies and Rules as stated in the 2025 Handbook.

30.    The Rules, contained within the Handbook, further provide in relevant part concerning a change in ownership resulting from the death of an owner:

(a) Except as set forth in *Sections 4.14(b) & (c)* below, the institution must submit the appropriate Notification Form and fee to the Executive Director of NACCAS at least 30 calendar days before the change and NACCAS shall acknowledge the change.

(b) If the institution fails to notify NACCAS of a change described in *Section 4.13,* within 90 calendar days after the deadline for notification set forth in these Rules, the change shall no longer be considered a non-substantive change under these *Rules*. The Commission shall consider any such change to be a substantive change, and the institution must apply for approval of such change by the Commission in accordance with the applicable provisions of *Part 4* of these *Rules.*

(c) Notwithstanding *Section 4.14(a) & (b),* the Executive Director shall have the authority to waive any prior notice requirement for a non-substantive change where prior notice of the change was not possible (i.e. death of a school contact person) and the institution notified NACCAS within 90 days after the occurrence of the change.

*See* Exhibit 1, the Handbook, the Rules, Section 4.14 *Notification to NACCAS of Non-Substantive Changes,* pg. 92.

31.    Moreover, the Rules, contained within the Handbook, state that "[i]nstitutions must submit financial statements that… [a]re audited and submitted electronically by the institution's independent Certified Public Accountant." *Id.,* Section 5.1(a)(2).

### The Negative /Adverse Actions

32.    New Concept's original founder and President, Ms. Maria Mercedes Vazquez (the "**Deceased**"), died on November 13, 2024 (the "**Death**").

33.    At all relevant times herein, the Deceased resided at 100 Lincoln Rd., #722, Miami Beach, FL 33139 (the "Deceased's Residence"), up until the Death. The Deceased's Residence was in a major condominium building in the "South Beach" area of Miami Beach known as the

Decoplage Condos, *see* https://www.miamicondoinvestments.com/the-decoplage-condos, which feature a 24-hour attended lobby and 24-hour security.

34.    NACCAS was informed of and acknowledged the Death on or about November 20, 2024. A true and accurate copy of the November 20, 2024, email Correspondence is attached hereto as **Exhibit 2.** *See* Exhibit 10, pg. 10-11.

35.    NACCAS additionally was informed of the Death on March 6, 2025, through New Concept's Form #1A Notification of a Non-Substantive Change of Ownership submission (the "**Form#1A**"), which was sent by both mail and email and which NACCAS' Eddie Broomfield, Associate Executive Director, acknowledged receiving. A true and accurate copy of the Form#1A is attached hereto as **Exhibit 3**.

36.    The Form#1A sent on March 6, 2025, informed NACCAS, not only of the death of Ms. Vazquez, but also that her ownership shares were being distributed 51% to I. Garcia, 40% to A. Garcia, and 9% to Matthew Gutierrez, nephew of the two Garcia brothers and grandson of the late Ms. Vazquez. The Form #1A also informed NACCAS that I. Garcia was President of New Concept and, in item #26, it informed NACCAS that he was the "primary contact" for New Concept with the following contact information,  14125 SW 45 Terrace, Miami, FL 33175, (786) 337-2550, igarcia.ncmbs@gmail.com. *Id.* The address given by I. Garcia also is the address of New Concept's main campus.

37.    The share ownership reported in the March 6, 2025, Form#1A was consistent with share certificates signed by Ms. Vazquez prior to her death for distribution to her heirs. After Form#1A was filed, A. Garcia filed a probate proceeding in Florida State Superior Court in March 2025 challenging the share certificates and asserting that there was a will signed by the late Ms.

Vazquez. A. Garcia's dispute with I. Garcia was settled with an agreement signed by them on June 30, 2025, under which A. Garcia signed over his 40% shares to I. Garcia.

38.    On July 3, 2025, I. Garcia then notified Broomfield of A. Garcia's departure from New Concept, that I. Garcia and A. Garcia had reached a settlement agreement, and I. Garcia requested assistance on "what steps [I. Garcia need[ed] to complete moving forward." A true and accurate copy of the July 3, 2025, Correspondence is attached hereto as **Exhibit 4.** *See* Exhibit 4.

39.    On July 8, 2025, Broomfield responded, asking whether there had been any progress regarding the appointment of an executor. *Id.*

40.    Thereafter, I. Garcia asked whether the agreement executed between him and A. Garcia was sufficient to satisfy a change of ownership of New Concept. *Id.*

41.    Broomfield did not respond. *Id.*

42.    On July 14, 2025, I. Garcia provided *another* update regarding the probate process, along with I. Garcia "dealing with [his] nephew," Matthew Gutierrez. *Id.*

43.    Broomfield did not respond. *Id.*

44.    Subsequently, Matthew Gutierrez objected to the share distribution that the late Ms. Vazquez had made and thereafter another agreement was reached on October 30, 2025, pursuant to which I. Garcia has 66 2/3 of the shares of the corporation and Matthew Gutierrez has 33 1/3 of the shares of the corporation. The Probate Court approved this agreement in a November 17, 2025, Order.

45.    On November 21, 2025, New Concept's counsel updated Darin Wallace ("**Wallace**"), Executive Director of NACCAS and Eddie Broomfield ("**Broomfield**"), Associate Executive Director of NACCAS, regarding the November 17, 2025, Probate Case Order concerning Ms. Vazquez's Estate that affected ownership of the shares of New Concept. A true and

accurate copy of the November 21, 2025, Correspondence, with an attached copy of the Court Order, is attached hereto as **Exhibit 5.**

46.    Counsel's November 21, 2025 email message again reminded NACCAS of Ms. Vazquez death in November 2024 and informed NACCAS that there had been a dispute over share ownership of New Concept, that an agreement had been reached, that the probate court had approved the agreement in a November 17, 2025 Order, that the agreement gave 66 2/3 of the shares to I. Garcia and 33 1/3 of the shares to Matthew Gutierrez and that I. Garcia was going to apply to be appointed as Personal Representative of the Estate of Maria Mercedes Vazquez. A copy of the November 17, 2025, Probate Court Order was attached to counsel's email. *Id.*

47.    Broomfield responded with a November 25, 2025 email sent to New Concept's counsel stating that New Concept had surprisingly failed to submit its FY 2024 Annual Financial Statement audit (the "**Audit**") to NACCAS[5] and informing New Concept that NACCAS had issued a Show Cause Order on October 16, 2025 (the "**Show Cause Order**") to New Concept on October 16, 2025 concerning the audit, something of which New Concept was unaware since it had not received a copy. *Id.*

48.    New Concept's counsel later obtained a copy of the Show Cause Order after New Concept's accreditation had been terminated and learned that it had been sent to the Deceased Owner at the Deceased's Residence. A true and accurate copy of the Show Cause Order is attached hereto as and contained within **Exhibit 6.** *See* Exhibit 6, pg. 3-8.

49.    Broomfield's November 25, 2025, email message noted that "[t]his matter must be addressed in order to avoid imminent Commission action." **Exhibit 5**.

---

[5] Relevant herein, the Audit had been timely submitted to the DOE on June 30, 2025, on eZ Audit.

50.     At this time, however, Broomfield did not notify New Concept or New Concept's counsel of a prior Letter of Inquiry NACCAS issued on or about August 6, 2025, regarding the failure to submit the Audit.

51.     New Concept later learned that a Letter of Inquiry was only mailed to the Deceased at the Deceased's Residence.

52.     The Letter of Inquiry was sent as a <u>confidential</u> letter.

53.     The Letter of Inquiry was not mailed to I. Garcia as New Concept's primary contact or any of the three (3) campuses of New Concept (despite the three (3) campuses' addresses listed within the Show Cause Order). NACCAS also failed to email the Letter to I. Garcia at igarcia.ncmbs@gmail.com or to New Concept at ncmbs@earthlink.net.

54.     The Show Cause Order was also sent as a <u>confidential</u> letter.

55.     The Show Cause Order was not mailed to I. Garcia as New Concept's primary contact or any of the three (3) campuses of New Concept (despite the three (3) campuses' addresses listed within the Show Cause Order). NACCAS also failed to email the Order to I. Garcia at igarcia.ncmbs@gmail.com or to New Concept at ncmbs@earthlink.net.

56.     New Concept did not receive the Show Cause Order.

57.     And the company was not aware of the Order until after New Concept counsel had been made aware, on January 9, 2026, of NACCAS' termination of New Concept's accreditation.

58.     Moreover, it was not until February 2, 2026, after New Concept counsel requested copies of the Letter of Inquiry and Show Cause Order, that New Concept actually received and even read the contents of the Letter and Order. A true and accurate copy of the Letter of Inquiry is attached hereto as and contained within **Exhibit 6.** *See* Exhibit 6, pg. 1-2; *see also* Exhibit 6, pg. 3-8.

59.     Significantly, in the November 25, 2025 email message from Broomfield to New Concept, in which Broomfield stated that New Concept needed to address the past due FY 2024 Audit "in order to avoid imminent Commission action," **Exhibit 5**, *see supra* paragraph 47, Broomfield oddly failed to tell New Concept that the Commission already "took an adverse action against [New Concept]" at the Commission's November 12, 2025 meeting, as would later be stated in a December 12, 2025 Withdrawal Letter sent only to the Deceased at the Deceased 's Residence. *See infra,* Paragraph 77.

60.     On December 2, 2025, I. Garcia requested assistance from NACCAS in submitting the Audit to NACCAS; NACCAS notified I. Garcia that "in accordance with Section 5.1(a)(2) of [the Rules]… audited financial statements must be submitted electronically (i.e. through an institution's NACCAS CRM Online Portal)." A true and accurate copy of the December 2, 2025, Correspondence is attached hereto as **Exhibit 7**.

61.     However, I. Garcia's brother, A. Garcia, previously had created an account and was submitting all New Concept audits acting as New Concept's external Certified Public Accountant (CPA).

62.     A. Garcia was not New Concept's external CPA, that was a different person; rather, A. Garcia was acting Vice President of New Concept.

63.     NACCAS knew (or should have known) A. Garcia was submitting all of New Concept's audits and knew (or should have known) A. Garcia was not New Concept's external CPA, as A. Garcia served on NACCAS' Board of Commissioners from 2017 to 2022, and acted as Chair of the Board of Commissioners in 2022.

64.    Then, A. Garcia left the management of New Concept in the summer of 2025 for reasons not directly related to this action. NACCAS was made aware that A. Garcia had departed from New Concept on or about November 4, 2025.

65.    Prior to his departure from New Concept, as stated above in paragraph 38, A. Garcia had reached an agreement with I. Garcia concerning share ownership. That agreement also provided that he (A. Garcia) would take care of certain compliance responsibilities for New Concept for 2024, including the filing of the FY 2024 audits with the U.S. Department of Education and with NACCAS.  Thus, A. Garcia filed New Concept's FY 2024 audits with eZ Audit on June 30, 2024 and I. Garcia understood and believed that A. Garcia had also filed the FY 2024 audit with NACCAS shortly after that date.

66.    Accordingly, I. Garcia was unaware, after A. Garcia's departure from New Concept in the summer of 2025, that A. Garcia had failed to file the FY 2024 audit with NACCAS. Furthermore, neither I. Garcia nor New Concept received the NACCAS Letter of Inquiry nor the NACCAS Show Cause Order to notify them that the audit had not been filed, and they first learned about the missing audit from Mr. Broomfield's November 25, 2025 email. Consequently, neither I. Garcia, nor New Concept's true external CPA, had access to an account to submit the Audit via the CRM Online Portal.

67.    Thus, I. Garcia reached out to NACCAS on December 2, 2025, for assistance to create a new account to rectify the Audit deficiency. *See* **Exhibit 7**.

68.    Broomfield told I. Garcia to get in touch with Steven Goldstein ("**Goldstein**"), Director of Finance for NACCAS.  Goldenstein responded on December 2, 2025, but did not provide any assistance to I. Garcia to create an account for the CRM Online Portal. *Id.* See **Exhibit 7**.

69.     Previously, in his November 25, 2025, email message, Broomfield basically had said that NACCAS would not recognize I. Garcia as having authority to act for New Concept until I. Garcia had proof that he had been appointed by the probate court:

> Ignacio Garcia has already initiated a Non-Substantive Change of Ownership with NACCAS, which is currently on hold pending distribution of the estate assets. So long as all recipients of Ms. Vazquez's ownership interests are distributed to qualifying "Family Members" as defined in the Glossary to the NACCAS Handbook, this change will processed [sic] as non-substantive. Depending on the nature of actual distributions to be made, it may be necessary to revise the original application.

> Please provide NACCAS with documentation of the court appointment of a Personal Representative as soon thereafter as possible. NACCAS will recognize the Personal Representative as having authority to act on behalf of the estate for purposes of accrediting activities.

**Exhibit 5**.

70.     This left I. Garcia and New Concept in a classic Catch-22. On the one hand, they were being told by Broomfield to get the FY 2024 audit filed; but on the other hand, when they tried to file it in the NACCAS portal, they learned the school's auditor did not have a password and needed a new account (because the prior account had been set up by the now departed A. Garcia) and NACCAS would not allow I. Garcia to set up a new account until he had a Probate Court Order, on which he was waiting, having just gained approval on November 17, 2025 from the Probate Court for an agreement giving I. Garcia ownership of the majority of the shares of the corporation that owns the schools. NACCAS's position, as announced by Broomfield, failed to give deference to the Probate Court's November 17, 2024, Order, and thereby deprived I. Garcia of his rightful authority to act on behalf of New Concept and effectively precluded New Concept from getting the audit filed with NACCAS.

71.     On December 26, 2025, I. Garcia again notified both Goldstein and Broomfield of this issue and requested assistance in creating a new account for New Concept's true external CPA,

14

Jorge De La Torre ("**Torre**"), to submit the Audit. A true and accurate copy of the December 26, 2025, Correspondence is attached hereto as and contained within **Exhibit 7.**

72.     NACCAS did not respond.

73.     Due to NACCAS' lack of response, and at the direction of counsel, I. Garcia electronically mailed the Audit to Broomfield and Goldstein on December 26, 2025. *Id.* The FY 2024 Audit demonstrated that New Concept clearly met NACCAS' financial responsibility standard with a 2.10 financial responsibility composite score (1.5 or higher is required).

74.     On January 6, 2026, NACCAS declined to accept the Audit submission made by I. Garcia because it was not sent "directly by the institution's external CPA firm who performed the audit," despite the known submission issues New Concept was having and Torre being Cc'd on the December 26, 2025, Correspondence. *Id.*  A true and accurate copy of the January 6, 2026, Correspondence from Steve Goldstein is attached hereto as **Exhibit 8.** *See* Exhibit 8.

75.     Notably, NACCAS still did not provide assistance to New Concept on electronically submitting the Audit through the CRM Online Portal despite New Concept's pleas for assistance.

76.      NACCAS was well aware that New Concept had completed its Audit; submitted it to the DOE; was willing and able to electronically submit it to NACCAS (which New Concept did via email on December 26, 2025), but adamantly refused to accept it because it was not submitted via the CRM Online Portal by the external CPA.

77.     During the December 2025 time period while New Concept was actively engaged with NACCAS officials regarding efforts to  submit its Audit, NACCAS issued a letter dated December 12, 2025, withdrawing  New Concept's accreditation, placing New Concept's "Accreditation on Probation, and giving New Concept 20 calendar days to file a notice of appeal

from that decision" (the "**Withdrawal Letter**"). A true and accurate copy of the Withdrawal Letter is attached hereto as and contained within **Exhibit 9**. *See* Exhibit 9, pg. 5-13.

78.    NACCAS only mailed the Withdrawal Letter to the Deceased at the Deceased's Residence.

79.    Notably, the Withdrawal Letter was sent as a <u>confidential</u> letter.

80.    NACCAS did not mail the Withdrawal Letter to I. Garcia at 14125 SW 45 Terrace, Miami, FL 33175, the "primary contact" listed on Form#1A filed on March 6, 2025, with NACCAS. NACCAS did not email the letter to I. Garcia at <u>igarcia.ncmbs@gmail.com</u>. NACCAS did not email the letter to <u>ncmbs@earthlink.net</u>. NACCAS did not send the letter to any of the three (3) campuses of New Concept, despite the fact that all three campuses were listed on the "Re" line of the Withdrawal Letter. NACCAS did not send the Withdrawal Letter to New Concept's counsel, despite the fact that counsel had been recently involved in communications with the two most senior executives at NACCAS.

81.    New Concept did not respond to the Withdrawal Letter, as New Concept did not receive and was never notified of the Withdrawal Letter until January 9, 2026.

82.    When New Concept did not respond to or file a notice of appeal within the 20-day appeal period announced in the December 12, 2025 Withdrawal Letter (because NACCAS only sent it to the Deceased at the Deceased's Residence), NACCAS then made the withdrawal of New Concept's accreditation final in a January 8, 2026 (the "**Termination Letter**"). A true and accurate copy of the January 8, 2026, Termination Letter is attached hereto as and contained within **Exhibit 9.** *See* Exhibit 9, pg. 1-4.

83.    Again, NACCAS only mailed the January 8, 2026, Termination Letter to the Deceased at the Deceased Residence.

84.    Notably, the January 8, 2026, Termination Letter was sent as a <u>confidential</u> letter.

85.    Again, NACCAS did not mail the January 8, 2026, Termination Letter to New Concept's primary contact, I. Garcia or any of the three (3) campuses of New Concept (again, despite the three (3) campuses were listed on the "Re" line of the January 8, 2026, Termination Letter). NACCAS did not email the Termination Letter to I. Garcia at igarcia.ncmbs@gmail.com, nor did NACCAS email the Termination Letter to ncmbs@earthlink.net.

86.    At this time, NACCAS also did not notify New Concept's counsel of the Termination Letter despite active engagement between NACCAS and New Concept's counsel.

87.    Ironically, the January 8, 2026, Termination Letter stated, falsely, that "[t]he <u>institution</u> received notification… by letter dated December 12, 2025," and "[t]he <u>institution</u> received this letter on December 15, 2025…" *See* Exhibit 9, pg. 1-4. (emphasis added).

88.    Notably, when both New Concept counsel and I. Garcia had email exchanges with NACCAS officials <u>on January 6, 2026</u>, about the ongoing efforts to get an account set up so that the FY 2024 audit could be submitted, neither Broomfield nor Goldstein mentioned that the December 12, 2025, Withdrawal Letter had been issued. *See* Exhibit 8 (January 6, 2026, Email Exchanges).

89.    It was not until January 9, 2026, that New Concept learned of the Withdrawal Letter, and the Termination Letter after Wallace provided a copy of the same to counsel of New Concept. A true and accurate copy of the January 9, 2026, email correspondence is attached hereto as **Exhibit 10.**

90.    The December 12, 2025 Withdrawal Letter and the January 8, 2026 Termination Letter were only provided to New Concept's counsel after New Concept's counsel had sent a Zoom invitation to NACCAS Executive Director Darin Wallace and NACCAS Director of Finance Steve

17

Goldstein for a virtual meeting with I. Garcia and counsel to provide assistance to New Concept to create a new account for New Concept so its external CPA could submit the Audit to the CRM Online Portal.

91.    Even though I. Garcia was communicating with NACCAS officials Goldstein and Broomfield in December in connection with attempts to get the FY 2024 Audit filed, neither one of them informed I. Garcia that the NACCAS Commission on November 12, 2025 had voted for withdrawal of New Concept's accreditation and that the December 12, 2025 Withdrawal Letter had been issued.

### Damage(s)

92.    NACCAS withdrew New Concept's accreditation on or about December 12, 2025; and NACCAS made this decision final on January 8, 2026.

93.    On January 9, 2026, New Concept's counsel sent an email to Darin Wallace informing him that NACCAS's prior notices had been sent to the Deceased at the Deceased's Residence and were not fair or effective notice and the withdrawal should be rescinded. *See* **Exhibit 10**.

94.    On January 14, 2026, New Concept's counsel demanded NACCAS to "restore, to New Concept, its right to appeal NACCAS' December 12, 2025 withdrawal of accreditation and New Concept's accreditation pending the outcome of the appeal, rights that NACCAS improperly and wrongfully took from New Concept by addressing and transmitting the December 12, 2025 withdrawal of accreditation letter only to the deceased former owner of the school at the apartment at which she no longer lives since her death on November 13, 2024." A true and accurate copy of the January 14, 2026, Demand Letter is attached hereto as **Exhibit 11.**

95.    On January 21, 2026, NACCAS wholly rejected New Concept's demand, stating NACCAS "appropriately (and in accordance with its Rules) issued all relevant correspondence

pertaining to this matter to the School's designated official contact person of record at the School's official contact address of record." A true and accurate copy of the January 21, 2026 Rejection Letter is attached hereto as **Exhibit 12.** The Rejection Letter claimed that NACCAS's action in sending notice only to the Deceased at the Deceased's Residence was justified by NACCAS rules, but NACCAS rules do not justify that action and more importantly such action does not meet the overriding mandate of federal due process law to provide reasonable and effective notice.

96.    For the record, New Concept denies that, as of August through December 2025, the Deceased was "the School's designated official contact person of record" asserted in the Rejection Letter and further New Concept denies all other allegations in the Rejection Letter.

97.    Subsequently, New Concept counsel sent multiple subsequent email messages to NACCAS counsel, taking issue with the Rejection Letter and asking NACCAS to reconsider its actions and warning that this lawsuit would be filed if NACCAS did not withdraw the termination of accreditation and restore New Concept to the place where it would have been in December 2025 if NACCAS had given fair and effective notice of the December 12, 2025 Withdrawal Letter and a reasonable opportunity to seek an appeal from that adverse action and to retain accreditation while the appeal was pending. NACCAS and its counsel have spurned all such requests and have forced New Concept to go to the expense of bringing this litigation to regain the appeal rights that were never made available to New Concept and meanwhile have knowingly exposed New Concept and its students and employees to ongoing harm.

98.    After being informed of NACCAS' January 8, 2026, termination of New Concept's accreditation, the Florida CIE changed New Concept's licensure to a "provisional license" lasting only until July 31, 2026, subject to several burdensome re-licensing provisions.

99.     Due to the withdrawal of accreditation, New Concept cannot offer Title IV federal student aid to existing and/or prospective students, which will force over two-thirds of its existing students to pay for their education out-of-pocket, and will also require prospective students to pay for their education out-of-pocket, something most of them are unable to do for longer programs, which in turn means New Concept will have not have the funds it needs to operate.

100.    In recent years over 80% of New Concept's tuition revenues have come from the Title IV federal student aid programs, and loss of this revenue, if it continues, eventually will force New Concept to terminate New Concept staff, lose students to competitors in the area (such as Celebrity School of Beauty), and ultimately suffer great harm to its reputation and goodwill.

101.    Due to the withdrawal of accreditation, CIE has denied New Concept's "License By Means of Accreditation," and now only provisionally licenses New Concept to conduct business in the State of Florida, subject to it undergoing a new burdensome licensing process, which includes proof of financial stability, a showing that it is difficult for it to make given loss of federal student aid eligibility.

102.    For all the reasons set forth above, New Concept faces an existential threat from loss of accreditation which is a direct result of New Concept having been deprived of any opportunity to exercise a right to appeal NACCAS December 12, 2025, withdrawal action due to the manifestly inadequate notice given by NACCAS.

103.    The merits of NACCAS' decision contained within the December 12, 2025 Withdrawal Letter is not at issue in this case and New Concept is not seeking review of the merits of that decision. Instead, New Concept seeks review of, and relief from the procedural actions

taken by NACCAS with respect to the giving of notice about the December 12, 2025, adverse action.[6]

104.    The sole purpose of this action is to determine whether NACCAS violated the procedural due process rights of New Concept when it knowingly provided deficient and wholly ineffective notice of the Negative/Adverse Actions only to New Concept's former deceased owner which predictably did not reach New Concept management and did not lead to New Concept filing an appeal within NACCAS specified time period. Accordingly, this action is not subject to the initial arbitration requirement in 20 U.S.C. § 1099b(e) because this action is not brought to challenge the outcome of the merits of a final adverse action but rather to challenge a procedural denial of the right of appeal of an adverse action.

## COUNT I – DENIAL OF FEDERAL COMMON LAW DUE PROCESS

105.    New Concept hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 104 of this Verified Complaint, as though fully set forth herein.

106.    To comply with the regulations promulgated by the Secretary of the Department of Education, an agency must "demonstrate that the procedures it uses throughout the accrediting process satisfy due process." 34 C.F.R. § 602.25. Due process requires an agency to "notif[y] the institution or program in writing of any adverse accrediting action or an action to place the institution or program on probation or show cause" and that "notice [must] describe[] the basis for the action." 34 C.F.R. § 602.25(e).

---

[6] New Concept hereby expressly reserves all rights, remedies, claims, and causes of action, whether known or unknown, suspected or unsuspected, that it may have arising out of or relating to the subject matter of the current action. Nothing herein shall be construed as a waiver or release of any such rights or claims, and New Concept retains the full ability to assert them in any future action or proceeding.

107.    Additionally, due process requires an agency to provide "sufficient opportunity for a written response by an institution or program regarding any deficiencies identified by the agency, to be considered by the agency within a timeframe determined by the agency, and before any adverse action is taken." 34 C.F.R. § 602.25(d).

108.    Moreover, an agency must "[f]ollow its written policy for notifying the institution or program of the finding of noncompliance." 34 C.F.R. § 602.20(1)(a).

109.    In reviewing an accrediting agency's decision to strip a member of accreditation under a common-law due process claim, the Court is required to focus primarily on whether the accrediting agency followed its rules in reaching its decision.  *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.,* 781 F.3d 161, 172 (4th Cir. 2015) (citation omitted).

110.    A court may also overturn an accrediting agency's decision to strip a member of accreditation when such decision is arbitrary and unreasonable or is not supported by substantial evidence. *Prof'l Massage Training Ctr., Inc.,* 781 F.3d at 171.

111.    NACCAS, in sending the Letter of Inquiry, Show Cause Order, the Withdrawal Letter only to the Deceased and then terminating  New Concept's accreditation on January 8, 2026, when it knew (1) the Deceased died on November 13, 2024; (2) that New Concept's March 6, 2025 Form#1A designated I. Garcia as "primary contact" with a mailing address and email address, (3) that New Concept had three (3) active campuses with mailing addresses; and (4) that New Concept was represented by counsel and counsel's email address was available, failed to give reasonable, effective and timely notice of the adverse action taken by the NACCAS Commission and of the time-limited 20-day opportunity for an appeal of that adverse action; all of these actions denied New Concept of the procedural due process rights to which it is entitled under federal law (i.e, 20 U.S.C. § 1099b (a)(6) and 34 C.F.R. § 602.25).

112.    Specifically, NACCAS sending notice of the Negative/Adverse Actions via certified mail, return receipt requested, to a known deceased individual, purportedly in accordance with its Rules fails to provide reasonable notice and fair opportunity (or the procedural due process required under 34 C.F.R. Part 602) to New Concept to respond to the Negative/Adverse Actions as New Concept received no notice of the Negative/Adverse Actions.

113.    Moreover, NACCAS' refusal to accept and follow the Form #1A notification filed on March 6, 2025, by I. Garcia is wholly unsupported by NACCAS' own rules, especially considering that NACCAS had no notice of any other primary contact for New Concept.

114.    NACCAS' failure and refusal to accept I. Garcia as the person with authority to act on behalf of New Concept is not justified by NACCAS rules, nor by the circumstances, especially considering the November 17, 2025 Probate Court Order, provided to NACCAS by New Concept counsel in a November 21, 2025 email, which Order approves of the allocation of a controlling share percentage of 66 2/3 percent of New Concept's shares to I. Garcia. This makes NACCAS' failure to send a copy of the December 12, 2025, Withdrawal Letter directly to I. Garcia, at the address given in the March 6, 2025 Form #1A, all the more improper and indefensible.

115.    Significantly, while NACCAS was actively engaged in discussions with I. Garcia and New Concept's counsel, NACCAS failed/refused to send direct timely notice to them and instead sent notice of the Negative/Adverse Actions to an individual known to be deceased.

116.    Accordingly, based on the foregoing, NACCAS has violated New Concept's rights to procedural due process under 34 C.F.R. Part 602 and 20 U.S.C. § 1099b(a) and its termination of New Concept's accreditation resulting from that violation must be overturned.

WHEREFORE Plaintiff New Concept Massage & Beauty School prays this Court to enter judgment in its favor (1) declaring that NACCAS failed to provide New Concept with effective

and timely notice of the December 12, 2025 Withdrawal Letter and fair and reasonable opportunity to pursue an appeal of the adverse action announced in that letter and that such failure violated New Concept's rights to procedural due process under 20 U.S.C. § 1099b (a)(6) and 34 C.F.R. § 602.25 (e) & (f); and (2) entering a temporary restraining order and/or preliminary injunction directing  NACCAS, among other things, to stay the January 8, 2026 termination of  New Concept's accreditation, to grant New Concept a fair and reasonable opportunity to pursue an appeal of the December 12, 2025 Withdrawal Letter, to immediately provide notice of the withdrawal of the termination of accreditation to the U.S. Department of Education and the Florida Commission for Independent Education and all other parties NACCAS has informed regarding the withdrawal of New Concept's accreditation including via correspondence and publication, and to maintain New Concept's accreditation pending the outcome of this litigation and/or the outcome of New Concept's appeal of the Adverse Action; (3) enter a permanent injunction directing NACCAS to provide fair reasonable and effective notice to New Concept, consistent with the information provided to it by New Concept,  the procedures set forth in the *Rules of Practice and Procedure* and the dictates of  the federal regulations and federal common law due process and to restore and extend New Concept's existing grant of accreditation pending the outcome of an appeal by New Concept of the Withdrawal Letter; (4)  to enter an award of actual damages to New Concept in an amount to be determined at trial for economic directly caused by NACCAS's denial of New Concept's rights to procedural due process, including compensatory and consequential damages as well as pre and post-judgment interest; (5) award New Concept punitive damages in an amount to be determined at trial to punish NACCAS for its willful violations of New Concept's rights to procedural due process and continuation of those violations even after being requested by

24

New Concept in January 2026 to rescind its prior actions; and (6) for such further and other relief this Court deems just and proper under the circumstances.

**COUNT II – BREACH OF CONTRACT (NACCAS Rules)**

117.    New Concept hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 116 of this Verified Complaint, as though fully set forth herein.

118.    The parties here, New Concept, by applying initially (and periodically on renewals) to receive accreditation from NACCAS and agreeing  to be bound by its Handbook, specifically including the *Rules of Practice and Procedure*, and NACCAS, by accepting New Concept's applications and agreeing to provide it accreditation in accordance with the Handbook, together formed a valid and enforceable contract expressed in the rules, standards, bylaws and terms found in the Handbook as it was amended from time to time (the "Contract").

119.    Pursuant to the Contract, on an annual basis New Concept has paid in full the "sustaining fees" required under the Contract to remain accredited by NACCAS.

120.    New Concept has performed all of its obligations under the Contract, including, but limited to, electronically submitting its annual Audit to NACCAS; notifying NACCAS of the former owner's death; and paying its "sustaining fees," except, due to the issues outlined above in the allegations of this Complaint, New Concept encountered difficulties filing the FY 2024 Audit and annual Report even though it made good faith efforts to do so.

121.    NACCAS has breached the *Rules of Practice and Procedure* by withdrawing accreditation as a direct result of NACCAS' failure to properly and effectively notify New Concept of the Negative/Adverse Actions, in accordance with NACCAS Rule(s) 7.1, 7.2, 7.5 and/or 8.16 and in accordance with NACCAS knowledge that Marie Mercedes Vazquez was deceased and that her son I. Garcia had been designated as the primary contact for New Concept.

122. Notably, NACCAS did not notify New Concept of the Negative/Adverse Actions by sending the Notices to the addresses of the three (3) campuses of New Concept, to I. Garcia, New Concept's designated primary contact and President, or to New Concept's counsel, despite active, ongoing communications with them.

123. NACCAS is bound by its *Rules of Practice and Procedure* and was obligated to act in accordance with the Rules but failed to do so.

124. As a direct and proximate result of these breaches of contract, New Concept's accreditation has been withdrawn and it has incurred damages and will continue to incur substantial damages including, among other things, a loss of present and future Title IV federal student aid, damage to its reputation, loss of goodwill, loss of students, and the potential loss of its entire business, resulting in monetary loss in an amount to be proven at trial.

WHEREFORE Plaintiff New Concept Massage & Beauty School prays for a judgment against Defendant (1) entering a temporary restraining order and/or preliminary injunction directing NACCAS, among other things, to stay the January 8, 2026 termination of New Concept's accreditation, to grant New Concept a fair and reasonable opportunity to pursue an appeal of the December 12, 2025 Withdrawal Letter, to immediately provide notice of the withdrawal of the termination of accreditation to the U.S. Department of Education and the Florida Commission for Independent Education and all other parties NACCAS has informed regarding the withdrawal of New Concept's accreditation including via correspondence and publication, and to maintain New Concept's accreditation pending the outcome of this litigation and/or the outcome of New Concept's appeal of the Adverse Action; (2) enter a permanent injunction directing NACCAS to provide fair reasonable and effective notice to New Concept, consistent with the information provided to it by New Concept, the procedures set forth in the *Rules of Practice and Procedure*

and the dictates of the federal regulations and federal common law due process and to restore and extend New Concept's existing grant of accreditation pending the outcome of an appeal by New Concept of the Withdrawal Letter; (3) for an award of money damages in amount sufficient to fully and fairly compensate Plaintiff for all it losses that it has directly and foreseeably sustained as a result of Defendant's breaches of contract, believed to be in excess of seventy-five thousand dollars ($75,000.00); (4) for pre and post-judgment interest at the greatest rate allowed by statute, (5) for costs herein expended and incurred; and (6) for such other and further relief this Court deems just and proper under the circumstances.

### COUNT III – TORTIOUS INTEREFERENCE WITH CONTRACTUAL AND BUSINESS RELATIONSHIPS

125.    New Concept hereby incorporates by reference each and every allegation set forth in Paragraphs 1 through 124 of this Verified Complaint, as though fully set forth herein.

126.    Prior to the actions taken by NACCAS, as set forth in the allegations in this Complaint, New Concept for many years was been a party to a Program Participation Agreement ("PPA") with the U.S. Department of Education ("DOE"), pursuant to which New Concept has been eligible for suitable students attending New Concept to receive awards of federal student aid funds under the Title IV Programs under the Higher Education Act, 20 U.S.C. §§ 1001 et seq. (the "Title IV Programs").

127.    In order to initially qualify for its original PPA and to be able to enter into successive PPAs, New Concept has to maintain institutional accreditation with an accrediting agency recognized by the DOE. Loss of accreditation with NACCAS results in loss of the institution's Title IV Programs' eligibility. NACCAS is and was aware of these facts.

128.    For an institution facing an Adverse Action by NACCAS, i.e., withdrawal or revocation or non-renewal of accreditation, NACCAS Rules provides a right of appeal and

27

continuation of accreditation during the appeal until a decision is made, consistent with federal regulations. If an institution facing an adverse action is in some way precluded from exercising its right of appeal, its loss of accreditation will become final at the end of the appeal period and it then also will lose eligibility for participation in the Title IV Programs. NACCAS was aware of this.

129.    New Concept and its students currently enrolled ("Current Students") were, and are, in a valid and binding contractual relationship pursuant to which New Concept has agreed to educate its students for payment of monies and adherence to school policies (the "**Enrollment Agreements**"). For many of the Current Students, the terms of the Enrollment Agreements envision that a substantial portion of tuition payments to be made by the Current Students will be made with funds received under the federal student aid Title IV programs.

130.    In the months of January and February, New Concept historically enrolls approximately 25 students per month, or around 6 every week, in those weeks ("Prospective Student Enrollments"). And, typically two-thirds or more of all of New Concept's prospective new enrollments rely on some level of support from the federal student aid programs in order to pay tuition and other expenses to attend school at New Concept.

131.    From the annual audits filed by New Concept, NACCAS was aware that New Concept has a PPA and that a large majority of its students participate in the federal student aid programs. NACCAS was also aware of the Enrollment Agreements as New Concept is required to produce copies of the Enrollment Agreements to NACCAS, pursuant to the Policies. *See e.g.* Exhibit 1, Handbook, Policies IV.03, 04. And New Concept has provided NACCAS with copies of an exemplar of the Enrollment Agreement and a copy of its PPA when it has filed its ISS (Institutional Self Study) with NACCAS.

132.    NACCAS intentionally interfered with New Concept's  PPA, the Enrollment Agreements and the Prospective Student Enrollments when it breached its Rules and New Concept's rights to procedural  due process pursuant to 34 C.F.R. Part 602 when it, among other things, improperly only sent notices of the Negative/Adverse Actions to  New Concept's deceased former owner and then terminated  New Concept's accreditation, directly and foreseeably causing New Concept to fail to meet the accreditation requirement in its PPA with DOE and thereby losing Title IV eligibility, and, with that, failing to meet reasonable expectations of Current Students and Prospective Student Enrollments.

133.    After New Concept and its counsel learned on January 9, 2026 that NACCAS had terminated New Concept's accreditation as of January 8, 2026 pursuant to the December 12, 2025 Withdrawal Letter that New Concept had not received, New Concept counsel for several weeks has demanded that NACCAS rescind the termination, reinstate New Concept's accreditation and reinstate its appeal rights and has pointed out that students are being harmed by NACAS's actions, but NACCAS has refused to rescind its actions.

134.    Based on the aforementioned described conduct, NACCAS' intentional interference constitutes willful, malicious, and/or reckless conduct.

135.    Specifically, NACCAS' intentional interference includes its willful disregard of New Concept's notifications that its former owner is deceased and that communications with New Concept should be sent to I. Garcia as primary contact;  its insistence on sending notices of Negative/Adverse Actions to the personal address of the deceased former owner which led to the wrongful withdrawal of New Concept's accreditation; and its refusal to rescind the termination of New Concept's accreditation after being informed by New Concept counsel that New Concept had

not received notice of the December 12, 2025 Withdrawal Letter and had not been afforded an opportunity to pursue an appeal..

136.    NACCAS has no justification for its intentional interference.

137.    As a direct and proximate result of NACCAS' intentional interference with the PPA, the Enrollment Agreements and Prospective New Enrollments, New Concept has incurred damages and will continue to incur substantial damages including, among other things, a loss of present and future Title IV federal student aid, damage to its reputation, loss of goodwill, loss of students, and the potential loss of its entire business in an amount to be proven at trial.

WHEREFORE Plaintiff New Concept Massage & Beauty School prays for a judgment against Defendant (1) entering a temporary restraining order and/or preliminary injunction directing  NACCAS, among other things, to stay the January 8, 2026 termination of  New Concept's accreditation, to grant New Concept a fair and reasonable opportunity to pursue an appeal of the December 12, 2025 Withdrawal Letter, to immediately provide notice of the withdrawal of the termination of accreditation to the U.S. Department of Education and the Florida Commission for Independent Education and all other parties NACCAS has informed regarding the withdrawal of New Concept's accreditation including via correspondence and publication, and to maintain New Concept's accreditation pending the outcome of this litigation and/or the outcome of New Concept's appeal of the Adverse Action; (2) enter a permanent injunction directing NACCAS to provide fair reasonable and effective notice to New Concept, consistent with the information provided to it by New Concept,  the procedures set forth in the *Rules of Practice and Procedure* and the dictates of  the federal regulations and federal common law due process and to restore and extend New Concept's existing grant of accreditation pending the outcome of an appeal by New Concept of the Withdrawal Letter; (3) for an award of actual damages in such amount as

shown by evidence to be necessary and appropriate to compensate Plaintiff for all its losses directly caused by NACCAS' acts of tortious interference in amount in excess of seventy-five thousand dollars ($75,000.00) as will fairly and reasonably compensate Plaintiff for its damages; (4) punitive damages in an amount which will adequately punish Defendant and deter other accrediting agencies from future similar conduct; (5) pre and post-judgment interest at the greatest rate allowed by statute, (6) for costs herein expended and incurred; and (7) for such other and further relief this Court deems just and proper under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY ON COUNTS II AND III.**

Dated: February 5, 2026.

Respectfully Submitted,

NEW CONCEPT MASSAGE & BEAUTY SCHOOL, INC.

By Counsel:    /s/  Timothy P. Bosson
Timothy P. Bosson, Esq. (VSB: 72746)
Annelise B. Becker (VSB: 101159)
Bosson Legal Group, PC
8300 Arlington Blvd., Suite B2 Fairfax, VA 22031
tbosson@bossonlaw.com
abecker@bossonlaw.com
Ph: (571) 775-2529
*Local Counsel for Plaintiff*

And

Ronald L. Holt, *pro hac admission forthcoming*
Ty L. Kalleck, *pro hac admission forthcoming*
Rouse Frets White Goss
Gentile Rhodes, PC
5250 W. 116th Place, Suite 400
Leawood, KS 66211
913-387-1600 – PH
913-928-6739 – FAX
tkalleck@rousepc.com
rholt@rousepc.com
*Lead Counsel for Plaintiff*

## VERIFICATION

STATE OF *Florida* )

                     ) ss.

COUNTY OF *Dade* )

        BE IT REMEBDERED, that on this 5th day of February, 2026, before me, the undersigned, a notary public in and for the county and state aforesaid, came Ignacio Garcia, personally known to me by the same person(s) who, being duly sworn on oath, states that he has read the foregoing Verfified Complaint and it is true to the best of the affiant's knowledge and belief.

New Concept Massage & Beauty School, Inc.



Printed Name: *Ignacio Garcia*

Title: *President*

Subscribed and sworn to before me this 5th day of February, 2026.

Notary

My Commission Expires:

*April 11, 2026*

AILIN GONZALEZ
MY COMMISSION # HH 251435
EXPIRES: April 11, 2026
NOTARY PUBLIC STATE OF FLORIDA