IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| NEW CONCEPT MASSAGE & BEAUTY SCHOOL, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:26-cv-354 (RDA/WEF) |
| NATIONAL ACCREDITING COMMISSION OF CAREER ARTS AND SCIENCES, INC. | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Emergency Motion for a Temporary Restraining Order ("Motion") brought by Plaintiff New Concept Massage & Beauty School, Inc. ("Plaintiff") against National Accrediting Commission of Career Arts and Sciences, Inc. ("Defendant"). Dkt. 7. Considering the Motion together with the Memorandum in Support (Dkt. 8), Defendant's Opposition (Dkt. 16), Defendant's Memorandum in Further Support to Response in Opposition to Motion (Dkt. 20), Plaintiff's Supplemental Memorandum in Support of Emergency Motion for Temporary Restraining Order (Dkt. 21), as well as the argument heard during the February 11, 2026 hearing, this Court GRANTS-IN-PART the Motion to reopen Plaintiff's window to appeal the withdrawal of its accreditation and DEFERS-IN-PART the Motion to allow Defendant to adjudicate Plaintiff's accreditation for the reasons that follow.

I. BACKGROUND

Plaintiff New Concept is a cosmetology school, which was formed in 1993, and today has three (3) campuses in Miami, Florida. Dkt. 1 at 1. Defendant NACCAS is an institutional accrediting agency recognized by the U.S. Department of Education ("DOE"), pursuant to 20

1

U.S.C. § 1099b.  *Id.* at 3.  In order for Plaintiff to participate in Title IV programs for students to receive federal student aid, Plaintiff is required to be accredited by an accrediting agency recognized by the DOE.  *Id.*  Plaintiff has been accredited by Defendant for approximately twenty (20) years and was allowed/required to offer its students Title IV federal student aid for this period of time.  *Id.*

Plaintiff seeks a Temporary Restraining Order ("TRO") requiring Defendant to refrain from withdrawing Plaintiff's accreditation as an educational institution, to reinstate Plaintiff's accreditation which Defendant terminated on or about December 12, 2025, and to refrain from taking further action against Plaintiff without providing due process of law.  Dkt. 7.  Plaintiff's original founder and President Maria Mercedes Vazquez (the "former owner") died on November 13, 2024.  *Id.* ¶ 32.  Plaintiff asserts that Defendant was informed of and acknowledged the death on or about November 20, 2024.  *Id.* ¶ 34.  On March 6, 2025, Plaintiff sent Form #1A, Notification of a Non-Substantive Change of Ownership to Defendant via email and mail.  *Id.* ¶ 35.  This document represented that the former owner's shares were being distributed 51% to Ignacio Garcia, 40% to Alexander Garcia, and 9% to Matthew Gutierrez, nephew of the two Garcia brothers and grandson of the late former owner.  *Id.* ¶ 36.  Along with the ownership information, the form listed Ignacio Garcia as President of New Concept, stated that he was the primary contact, and provided a mailing and email address.  *Id.*  Subsequently, Alexander Garcia initiated a probate proceeding challenging the share certificates.  *Id.* ¶ 37.  The matter was resolved between the brothers in June 2025 with Ignacio Garcia receiving 90% of ownership.  *Id.*

Notwithstanding the disputes surrounding ownership of Plaintiff, Plaintiff remained obligated to submit audited financial statements by its independent CPA by June 30, 2025.  Dkt. 16 at 6.  Plaintiff failed to timely do so.  *Id.*  On August 6, 2025, due to Plaintiff's failure to submit

financials, Defendant issued a Letter of Inquiry which was directed to Plaintiff's deceased former owner. *Id.* The letter was delivered on August 11, 2025, at 11:46 AM. *Id.* On October 16, 2025, Defendant issued a Show Cause Order as to why Plaintiff's accreditation should not be withdrawn for non-compliance. *Id.* This letter was also directed to Plaintiff's deceased former owner and was delivered on October 21, 2025. *Id.* at 7.

Another challenge to the former owner's estate came from Matthew Gutierrez (the former owner's grandson) and an agreement was reached on October 30, 2025. Dkt 1 ¶ 44.

Between July 2025 and October 2025, Ignacio Garcia was in communication with the Associate Executive Director of Defendant, Eddie Broomfield ("Broomfield") regarding the appointment of a successor. *Id.* ¶ 45. In November 2025, Plaintiff provided an update to Defendant and shared that an agreement had been reached in probate court which gave 66 2/3 of the shares to Ignacio Garcia and 33 1/3 of the shares to Matthew Gutierrez. *Id.* ¶ 46. Further, Plaintiff informed Defendant that Ignacio Garcia was going to apply to be appointed as Personal Representative of the estate of the former owner. *Id.* A few days later, via email, Bloomfield responded to Defendant's counsel stating that Plaintiff had failed to submit its FY 2024 Annual Financial Statement audit and that a Show Cause Order had been issued to Plaintiff on October 16, 2025. *Id.* ¶ 47. On December 12, 2025, Defendant sent a letter to the former owner's address informing Plaintiff of the withdrawal of accreditation. Dkt. 16 at 8. Plaintiff had until January 5, 2026, to appeal the loss of its accreditation. Dkt. 16-1 ¶ 37. On January 9, 2026, Plaintiff learned of termination of its accreditation. Dkt. 1 ¶ 57.

On February 5, 2026, Plaintiff brought claims against Defendant in this Court for violation of due process. Dkt. 1. The same day that Plaintiff filed its Complaint, it filed the instant Motion for a Temporary Restraining Order (Dkt. 7) along with a Memorandum in Support (Dkt. 8).

Plaintiff requests that this Court issue a TRO requiring Defendant to refrain from withdrawing its accreditation as an educational institution, to reinstate Plaintiff's accreditation which Defendant terminated on or about December 12, 2025, and to refrain from taking further action against New Concept without providing due process of law. Dkt. 7. Defendant opposes the entry of a TRO. Dkt. 16. The Court heard oral argument on February 11, 2026, during which Plaintiff set forth its case to support the issuance of a TRO and Defendant argued against such an issuance.

## II. STANDARD OF REVIEW

A motion for a TRO is subject to the requirements of Federal Rule of Civil Procedure 65(b). "While a preliminary injunction preserves the status quo pending a final trial on the merits, a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999). A grant of temporary injunctive relief requires the movant to establish the same four factors that govern preliminary injunctions: (1) the likelihood of irreparable harm to the plaintiff if the TRO is denied; (2) the likelihood of harm to the defendants if the TRO is granted; (3) the likelihood that the plaintiff will succeed on the merits; and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## III. ANALYSIS

A review of the factors set forth in *Winter* establishes that Plaintiff has satisfied its burden to obtain a TRO with respect to at least some of the relief it seeks. The Court analyzes each of the necessary elements below.

### A. Likelihood of Success on the Merits

Defendant mailed several notices, a letter of inquiry, and an order to show cause to Plaintiff's former owner prior to revoking Plaintiff's accreditation. Plaintiff argues that these

notices did not fairly provide notice to Plaintiff because: (i) Defendant was aware of the former owner's death; (ii) Ignacio Garcia was listed as the primary contact for notices from Defendant on the form informing Defendant of the former owner's death; (iii) Defendant sent the notices only to the former owner despite knowledge of her death; and (iv) no notices were sent to any of the other campuses.  Plaintiff claims that it was entitled to due process pursuant to 34 C.F.R § 602.25 in Defendant's decision to terminate accreditation and that it was denied due process.  Dkt. 7 at 1. Defendant maintains that the notices were served in accordance with its rules and did not deprive Plaintiff of due process.

In an action challenging an accreditation agency's revocation of accreditation, courts owe "great deference" to the agency's decision.  *See Wilfred Acad. of Hair and Beauty Culture v. S. Ass'n of Coll. and Schools*, 957 F.2d 210, 214 (5th Cir. 1992) (citing *Medical Inst. of Minnesota*, 817 F.2d 1310, 1314 (8th Cir.1987)); *St. Andrews Presbyterian Coll. v. S. Ass'n of Coll. & Schools*, 2007 WL 4219402, at *3 (M.D.N.C. Nov. 29, 2007).  This is because "[t]he standards of accreditation are not guides for the layman but for professionals in the field of education." *Parsons College v. North Central Ass'n of Colleges and Secondary Schools*, 271 F. Supp. 65, 73 (N.D. Ill. 1967).  When adjudicating common law due process claims against accreditation agencies, courts should "focus primarily on whether the accrediting body's internal rules provide[d] a fair and impartial procedure and whether it [followed] its rules in reaching its decision." *Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 781 F.3d 161 (4th Cir. 2015) (*citing Parsons College*, 271 F. Supp. at 65).  In light of the deference due, "[f]ederal courts have consistently limited their review of decisions of accrediting associations to whether the decisions were *arbitrary and unreasonable . . . .*" *Wilfred Acad.*, 957 F.2d at 214 (internal quotes and citations omitted) (emphasis added).

"Arbitrary and unreasonable" is a high bar, but the circumstances in this case suggest that Plaintiff can meet that bar, and it is likely that Plaintiff will be successful on the merits of its claim of Denial of Due Process. Although Defendant followed its published rules,[1] Defendant's decision to continuously send notices to the former owner's address despite notice that the former owner had died is unreasonable. In typical circumstances, it is understandable that Defendant would defer to its normal practices and procedures, but, given this is an atypical circumstance, and that Defendant was informed of the death of the former owner, Defendant should have had a more practical approach to ensure effective communication with Plaintiff – especially in light of the communications between Defendant and Ignacio Garcia and counsel. Defendant argues that Plaintiff failed to properly identify a new primary contact, but Defendant was aware that the former owner was deceased, and it was in communication with Plaintiff about the appointment of a new primary contact. Because disputes over the estate of the former owner caused uncertainty about the new primary contact, and given that Plaintiff was unresponsive to the letters mailed to the former owner's address, out of caution and to comport with due process, Defendant should have mailed notices to all of the registered addresses on file for Plaintiff. Defendant says it had no reason to know the notices were not actually received because it received delivery notices, but Plaintiff, who was otherwise responsive over other modes of communication, was not responsive to the notices, giving Defendant such reason. Thus, Plaintiff has established a likelihood of success on the merits of its Denial of Due Process claim.

However, Plaintiff has not established a likelihood of success on the merits with respect to all of the relief requested, and it is not clear to the Court that Plaintiff will be successful on its

---

[1] Defendant cites Sections 7.1(a), 7.1(c), 7.2(b), 7.2(d) and 7.5 of its Rules as the Rules relevant to the actions taken in this matter. Dkt. 16 at 2.

breach of contract or tortious interference claims. *See* Dkt. 1 at 25, 27. Moreover, the relief sought – restoration of accreditation – goes "far beyond the focus of procedural fairness to refashion the accreditation decision on the merits." *Professional Massage Training Center, Inc.*, 781 F.3d 172. Although Defendant's actions in mailing notices to a known decedent were unreasonable, there was confusion regarding ownership, and the heirs were not diligent in maintaining their responsibilities under Defendant's rules. Plaintiff has demonstrated a likelihood that it could successfully show that Defendant's notice regarding its accreditation was deficient but has not successfully demonstrated that, if not for the deficient notice, it would still be accredited. Thus, a more limited form of relief is appropriate in the circumstances present here. Plaintiff is entitled to a re-opened appeal period so that it may challenge the withdrawal of its accreditation because it did not receive the notices sent to its former owner but is not entitled to a restoration of accreditation itself, as that would merge too far with the ultimate resolution of this case. Accordingly, Plaintiff has demonstrated a likelihood of success on the merits with respect its first count, denial of federal common law due process, insofar as it seeks a re-opened appeal window.

### B. Likelihood of Irreparable Harm

On December 12, 2025, Defendant rescinded Plaintiff's accreditation. Dkt. 16 at 1. Because of the loss of its accreditation, Plaintiff states that it cannot offer its current or prospective students Title IV federal student aid. Dkt. 8 at 12. Plaintiff further states that this loss of funding has already resulted in a substantial decrease in new enrollees and that, if the institution continues without accreditation, it will have to begin terminating its employees and turning away students to

their competitors. *Id.* Defendant argues that the harm sustained by Plaintiff is not irreparable because Plaintiff can apply for re-accreditation. Dkt. 16 at 18.

Defendant is unlikely to suffer any cognizable harm from the issuance of a limited TRO, as the TRO will merely re-open the appeal window regarding the withdrawal of accreditation. In similar circumstances, courts have found that the balance of harms tips in favor of the schools because absent accreditation, existing or prospective students would lose what was presumptively a valuable institution performing an important service. *See Florida College of Business v. Accrediting Council for Independent Colleges and Schools*, 954 F. Supp. 256, 260 (S.D. Fl. 1996); *see also Hampton University v. Accreditation Council for Pharmaceutical Education*, 611 F. Supp. 2d 557 (E.D. Va. 2009) (finding that withdrawal of the school's accreditation might effectively sound the death knell for the school); *see also Dekalb County School District v. Georgia State Board of Education*, 2013 WL 791266, at *7 (N.D. Ga. Mar. 4, 2013) (holding that the loss of accreditation to the school district and resulting harm to the students in the district are profound).

Plaintiff faces the same fate. Without an appeal of the loss of accreditation, Plaintiff will not be able to challenge its loss of accreditation or to restore funding for students which is essential to their enrollment. Students who are unable to secure alternative funding will not be able to continue their education at the school and prospective students will be dissuaded from enrolling. Without a mechanism to challenge the withdrawal of their accreditation, Plaintiff's school will be unable to obtain Title IV funds and may be forced to close some or all of its campuses. If Plaintiff is unable to challenge the lapse in its accreditation status and remains unaccredited for a significant period, it will result in reputational harm and a loss of goodwill. *See Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 951 F. Supp. 2d 851, 854 (E.D. Va. 2012) (finding that in addition to the loss of students to competitors, loss of

accreditation results in a loss of goodwill). Thus, the harm caused to Plaintiff by not having further opportunity to challenge the withdrawal of its accreditation is irreparable, and the harm to Defendant by the issuance of a narrow TRO is unlikely.

### C. Public Interest

Finally, a TRO that reopens Plaintiff's appeal window serves the public interest rather than harms it. This would allow Plaintiff to appeal its loss of accreditation and allow Defendant to adjudicate its claims. Any matter involving an institution of higher learning will implicate the public interest, locally and (varying with the geographic reach of the particular school) even nationally or internationally. *Hampton University*, 611 F. Supp. 2d 569. The Court cannot identify any critical public interest that would be adversely affected by the partial grant of a temporary restraining order reinstating Plaintiff's period to appeal its accreditation revocation. Accordingly, this factor therefore also counsels in favor of granting the TRO.

### D. Security Bond

In addition, courts "may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). A district court has discretion to set the bond amount where it deems proper, but "it is not free to disregard the bond requirement altogether." *Hoechst Diafoil Co.*, 174 F.3d at 421. The Court determines that Plaintiff should post a bond in the amount of $5,000.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion (Dkt. 7) is GRANTED-IN-PART and DEFERRED-IN-PART; and it is

FURTHER ORDERED that Defendant shall reopen the appeal period for Plaintiff to challenge the withdrawal of its accreditation for TWENTY (20) DAYS; and it is

FURTHER ORDERED that Court defers the decision of whether accreditation should be restored; and it is

FURTHER ORDERED that Plaintiff shall post bond in the amount of $5,000 with respect to the temporary restraining order granted herein to be taken in by the Clerk's office to go into a non-interest-bearing account pursuant to Federal Rule of Civil Procedure 65(c); and it is

FURTHER ORDERED that this temporary restraining order shall remain in effect until March 8, 2026.

It is SO ORDERED.

Alexandria, Virginia
February 16, 2026

/s/ 
Rossie D. Alston, Jr.
United States District Judge